IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

CENTRAL DIVISION

UNITED STATES OF AMERICA, )
Plaintiff, )
vs. ) Case No. 2:07-CR-149TS
DINO NICK MITCHELL, )
Defendant. )
____________________________)

BEFORE THE HONORABLE TED STEWART

--------------------------------

June 9, 2008

Change of Plea

REPORTED BY: Patti Walker, CSR, RPR, CP
350 South Main Street, #146, Salt Lake City, Utah 84101

A P P E A R A N C E S

| | |
|---|---|
| For Plaintiff: | Michael Kennedy, AUSA<br>185 South State Street, #400<br>Salt Lake City, Utah 84111 |
| For Defendant: | Deirdre Gorman<br>205 26th Street, #32<br>Ogden, Utah 84401 |

SALT LAKE CITY, UTAH; MONDAY, JUNE 9, 2008; 8:30 A.M.

PROCEEDINGS

THE COURT: We are here in the case of United States of America vs. Dino Nick Mitchell. This is case 07-CR-149. Representing the United States is Mr. Michael Kennedy and Mr. Scott Romney and on behalf of the defendant Ms. Deirdre Gorman.

Ms. Gorman, I'm informed that Mr. Mitchell is applying to the Court to enter a guilty plea pursuant to a plea agreement; is that correct?

MS. GORMAN: That is, Your Honor.

THE COURT: Would you like to come forward to the podium accompanied by Mr. Mitchell?

MS. GORMAN: Your Honor, could I also introduce my co-counsel. This is Attorney Thaddeus Wendt. He was just sworn in the other day when you were conducting the honors.

THE COURT: I saw you there. I wondered who it might be that you were taking pictures of.

Again, what is your last name?

MS. GORMAN: It's Wendt, W-e-n-d-t. We've entered his appearance today.

THE COURT: Mr. Wendt, welcome.

Mr. Mitchell, if you would please raise your right hand and Ms. Malley will administer the oath to you.

DINO MICK MITCHELL,

Having been duly sworn, was examined
and testified as follows:.

THE COURT: Mr. Mitchell, do you understand that you are now under oath and that if you were to answer any of the questions that I am going to ask you falsely, that those false or untrue answers could be used against you in a separate prosecution for either perjury or making a false statement? Do you understand that?

THE WITNESS: Yes, I do understand, Your Honor.

THE COURT: Mr. Mitchell, what is full and true name?

THE WITNESS: Dino Nick Mitchell.

THE COURT: How old are you?

THE WITNESS: 38 years old.

THE COURT: How far did you go in school?

THE WITNESS: Eighth grade.

THE COURT: Mr. Mitchell, do you have any physical or mental disabilities that would interfere with your ability to understand what is happening here today or to think clearly today?

THE WITNESS: No, Your Honor.

THE COURT: Are you currently or have you recently been under the care of either a doctor or a psychiatrist?

THE WITNESS: No, Your Honor.

THE COURT: Have you ever been treated or

hospitalized for any mental illness or any type of addiction?

THE WITNESS: No, Your Honor.

THE COURT: In the past 24 hours have you taken any medicine, pills, drugs or have you drunk any alcohol?

THE WITNESS: No, Your Honor.

THE COURT: Is your mind clear today, Mr. Mitchell?

THE WITNESS: Yes, sir.

THE COURT: Do you understand what is happening here today?

THE WITNESS: Yes, sir.

THE COURT: Mr. Mitchell, has anyone threatened you or forced you to plead guilty or to enter into the plea agreement?

THE WITNESS: No, Your Honor.

THE COURT: Has anyone promised you something that is not contained in the plea agreement?

THE WITNESS: No, Your Honor.

THE COURT: Have you had the opportunity to discuss the charges against you in the indictment as well as your case in general with Ms. Gorman?

THE WITNESS: Yes, I did, Your Honor.

THE COURT: Are you fully satisfied with the counsel and the advice that she has given you?

THE WITNESS: Yes, Your Honor.

THE COURT: Mr. Mitchell, are you convinced that Ms. Gorman has represented you well?

THE WITNESS: Yes.

THE COURT: Do you understand that you should plead guilty only if you are in fact actually guilty and not for any other reason?

THE WITNESS: Yes, Your Honor.

THE COURT: Mr. Mitchell, under the constitution and the laws of the United States, you do have a right to continue to plead not guilty, in which case we would proceed to a trial here today. If you did go to trial, you would know that you would have certain rights. Those rights I'm sure would have been explained to you. You would have seen them in action in effect over the last few months. But, in addition, they are contained in the plea agreement in paragraph 6. They are actually listed, those rights that you would have if we proceeded to a trial. Have you reviewed those rights with Ms. Gorman?

THE WITNESS: Yes, I did, Your Honor.

THE COURT: Do you understand all the rights that you would have if you were to proceed to a trial here today?

THE WITNESS: Yes, Your Honor.

THE COURT: Do you have any questions about any of those rights?

THE WITNESS: No. Everything is fine.

THE COURT: Mr. Mitchell, do you understand that if we do proceed to have you plead guilty here today, that you will be giving up those rights and that you will not have a trial, but rather a judgment of guilty will be entered against you here this morning based on your guilty plea?

THE WITNESS: Yes, Your Honor.

THE COURT: Those rights are listed in paragraph 6, as I indicated, but I don't think that they contain this right that you will be giving up, and that is shortly here I will ask you to tell me what you did because --

THE WITNESS: I'm sorry. Can you go back on that one?

THE COURT: I will ask you what you did because I have to be convinced that you are actually guilty of the crime that you are pleading guilty to. So in a few minutes I'm going to ask you to tell me what you did so that I can be convinced of that fact. Therefore, you are going to have to give up your right not to incriminate yourself and you will have to acknowledge your guilt here in open court. Do you understand that as well?

THE WITNESS: Yes, Your Honor.

THE COURT: Do you understand that you can change your mind right now, refuse to enter a plea of guilty and we

then would proceed to a trial in this matter?

THE WITNESS: Yes, Your Honor.

THE COURT: Do you still wish to go ahead here this morning?

THE WITNESS: Yes, Your Honor.

THE COURT: Mr. Mitchell, have you received a copy of the indictment, that is the written charges pending against you?

THE WITNESS: Yes, I did.

THE COURT: Did you read it, the indictment itself, the written charges?

Do we have a copy of it?

THE WITNESS: Yes, I did receive the paper that she sent me.

THE COURT: Ms. Gorman, why don't you show Mr. Mitchell it just to make certain, please.

THE WITNESS: Okay.

THE COURT: Do you remember having received a copy of that?

THE WITNESS: Yes, Your Honor.

THE COURT: Have you discussed the indictment -- the charges in the indictment with Ms. Gorman?

THE WITNESS: Yes, we did.

THE COURT: Do you understand that the indictment charges that you violated 18 United States Code, Section

2314, and 18 United States Code, Section 371, conspiracy to transport and transfer stolen securities? Is that your understanding?

THE WITNESS: Yes, Your Honor.

THE COURT: Mr. Mitchell, if we were to proceed to trial here today, in order for the jury to find you guilty of this offense the government would have to prove certain things to the jury. In the law those things are referred to as the elements of the offense. I'm going to ask Mr. Kennedy to outline for you the elements of the offense of conspiracy to transport and transfer stolen securities.

Mr. Kennedy, if you would, please.

MR. KENNEDY: Yes, Your Honor. The government would have to prove that the defendant entered into an agreement with one or more other people to violate the law, that he did so knowingly, that there was some sort of interdependence between the co-conspirators, and at least one of the conspirators committed an act in furtherance of the conspiracy. We would also have to prove that the object of the conspiracy was to transport stolen property in interstate commerce. We would have to prove that the value of that property was $5,000 or greater and that it was in fact in interstate commerce, crossing state lines.

THE COURT: Thank you, Mr. Kennedy.

Mr. Mitchell, do you understand the charge against

you and what it means?

THE WITNESS: Yes, Your Honor.

THE COURT: Do you understand what the government would have to prove to a jury if you decided to go to trial here today?

THE WITNESS: Yes, I do understand.

THE COURT: Do you also understand that the maximum possible penalty of the crime to which you are pleading guilty is a term of imprisonment of up to five years, a possible fine of up to $250,000, a term of supervised release of up to three years, and a special assessment in the amount of $100?

THE WITNESS: Yes, Your Honor.

THE COURT: Mr. Mitchell, when I use the term supervised release, I'm referring to the fact that once you are released from custody, you will be released on certain terms or conditions. If you violate any of those terms or conditions, you could be sent back to prison and you could be forced to serve a sentence in addition to the original sentence that you will receive in this case. Do you understand that as well?

THE WITNESS: Yes.

THE COURT: Do you also understand that the crime to which you are pleading guilty is a felony, and if you do plead guilty, you could lose certain civil rights, for

example, the right to vote, the right to serve on a jury, the right to hold public office, and the right to possess any kind of a firearm?

THE WITNESS: Yes, Your Honor.

THE COURT: Mr. Mitchell, I have a copy of your plea agreement. Is the original there with you?

MS. GORMAN: It is, Your Honor.

THE COURT: Have you read the plea agreement, Mr. Mitchell?

MS. GORMAN: Your Honor, he had it read to him by myself.

THE COURT: Have you had an adequate opportunity to discuss it with Ms. Gorman?

THE WITNESS: Yes, Your Honor.

THE COURT: Are you confident that you understand the plea agreement?

THE WITNESS: Yes, Your Honor.

THE COURT: Do you have any questions about it?

THE WITNESS: No. I guess everything is fine, Your Honor.

THE COURT: Mr. Mitchell, I'm going to have Mr. Kennedy just briefly outline the terms of the agreement. The reason I'm doing this is I want to make certain that your understanding of what the agreement says and Mr. Kennedy's understanding are the same. So if you would

listen carefully to how Mr. Kennedy now describes the terms of the plea agreement.

Mr. Kennedy, if you would, please.

MR. KENNEDY: Yes, Your Honor. Thank you.

The terms of the agreement are that the defendant will plead guilty to Count 1 of the indictment, which is the only count against him.

THE COURT: Would you slow down just a little.

MR. KENNEDY: He will plead guilty to Count 1, which is the only count in the indictment. The government is agreeing to recommend a sentence at the low end of whatever guideline range the Court determines applies to the defendant. The defendant is agreeing that restitution is owing in this case and that he will be required to pay restitution.

THE COURT: How much is the restitution?

MR. KENNEDY: I do not recall the exact amount, Your Honor. I am not prepared with that this morning. I believe with regard to the other defendants it was somewhere in the range of $10,000 or so, but I do not recall the exact amount.

THE COURT: The restitution is jointly and severally owed by all of the co-defendants, meaning all of you owe it together. The risk there, Mr. Mitchell, is that if none of your co-defendants pay any part of it, then you

could be responsible for all of it. Do you understand that?

THE WITNESS: Yeah.

MR. KENNEDY: And, finally, Your Honor, the defendant is agreeing that if in some event he were to plead guilty and then be allowed to withdraw his plea at a later time, that he would not raise any objection to the statements made here today being used against him.

I should note for the record what is not in the plea agreement, Your Honor. This was of some discussion with Ms. Gorman and Mr. Mitchell. That is the government specifically is not recommending credit for acceptance of responsibility. I did advise Ms. Gorman and Mr. Mitchell that at least with regard to two levels, that's still within the Court's discretion, but that the government would not be recommending the third level of acceptance of responsibility. And also we do not have an affirmative recommendation with regard to minor participant, but it's been explained to Mr. Mitchell that the Court could still find that he was a minor participant.

THE COURT: Mr. Kennedy, Mr. Copeland just gave me a note indicating that the amount of restitution is actually $31,000. I think he probably took that from the plea agreements of the other co-defendants.

MR. KENNEDY: That sounds right, Your Honor.

THE COURT: All right.

Ms. White, have you been handling the affairs of the other co-defendants?

MS. WHITE: I did, Your Honor.

THE COURT: Do you have any idea whether or not they have been making payments on the restitution?

MS. WHITE: I do not, Judge, because I'm not involved in the supervision team, but I could find that information out for you today.

THE COURT: All right.

Well, Mr. Mitchell, again, the thing that I want to make clear to you, because I have an obligation to make certain that you fully understand what you are agreeing to if you plead guilty, again, the amount of restitution is $31,000. As you well know, there are a number of co-defendants in this case and they have all been given the same responsibility to repay that. We don't know right now whether or not they have been making their payments as they are required to do under the terms of supervision. But I do need to stress again that if for some reason nobody else, none of the other co-defendants pay anything, you could end up owing the whole $31,000 yourself. Do you understand that?

THE WITNESS: Yes, I do, Your Honor.

THE COURT: Do you have any questions about the plea agreement, Mr. Mitchell?

MS. GORMAN: Your Honor, I have a question. I didn't know about the restitution until we just read that. Is that etched in stone, that amount? I'm not sure what that is for.

THE COURT: It's for the -- my understanding and recollection, it's for the two bonds that were sold by the gentleman in Chicago.

MR. KENNEDY: Not so much sold. There were three bonds that were mailed to the gentleman in Chicago, Your Honor is right, and they were not recovered. The other bonds have been recovered.

MS. GORMAN: That amount is taken into consideration, how much they could have been cashed for today?

MR. KENNEDY: It was taken into consideration from the face value or the accrued value of the bonds. And, unfortunately, you know, they can't be replaced because they don't exist anymore.

THE COURT: That restitution is due to the gentleman from whom the bonds were stolen because he received back all the other bonds, but those three that had been sent to Chicago were never recovered.

MS. GORMAN: I see, Your Honor.

THE COURT: All right.

Mr. Mitchell, again, let me ask you, do you have

any questions?

THE WITNESS: Can we waive that?

THE COURT: We can't. The plea agreement provides for it and I would be obligated to order it in your case, as I've ordered it in the case of all the other co-defendants. I can assure you that I would insist that all the co-defendants pay their equal share of this. I think it would be a great injustice if just one of you paid more than their fair share, particularly someone who was entitled, as you may be, I can't tell you that you will be, but it's possible you may be entitled to the minimal participant departure. But the plea agreement provides for the payment of restitution and I am -- unless Mr. Kennedy is willing to take it out, I'm obligated to impose it.

THE WITNESS: Can I ask you how it will be paid, by working or payments or -- I don't have that kind of money.

THE COURT: At the time of sentencing there will be an amount recommended based upon the presentence report, which will take into account your history and financial condition and so on. And generally the Court orders that the restitution be paid over a relatively long period of time, a monthly payment that is reasonable for you and your income.

THE WITNESS: Okay.

THE COURT: Excuse me. Ms. Malley informs me that as to most of your co-defendants, I would have presumed perhaps even all of them, supervision under supervised release has been transferred to other jurisdictions, so we don't have any way of knowing how much they have been paying or how they are paying it.

MR. KENNEDY: Your Honor, it's my understanding that all four of the co-defendants at this point are still in custody. I don't think they have been released to supervision yet.

THE COURT: I was under the impression that one of them at least, if not more, has already been released and are supervised.

Bottom line is 31,000 roughly. You will be jointly responsible for that with your co-defendants, monthly payments over a period of time depending upon your ability to pay.

THE WITNESS: So if two of them doesn't pay, I would owe 93,000?

THE COURT: Oh, no. The total amount is 31,000 between all five of you -- between all of you.

THE WITNESS: I'm sorry. I didn't understand that part. I apologize.

THE COURT: I'm glad you asked that question so you were not under that impression. The total amount, the

maximum amount you would have to pay, along with the others, would be $31,000.

THE WITNESS: I agree with that, Your Honor.

THE COURT: Do you have any other questions about the plea agreement?

THE WITNESS: I guess everything looks fine. I guess everything looks good. I will accept it.

THE COURT: If you have questions, Mr. Mitchell, this is the time to ask them.

MS. GORMAN: Well, Your Honor, we made a few changes in the statement of facts. And I think that is what is probably hardest for my client is the fact that it is a conspiracy and to explain what his part was in that. And, basically, Your Honor, if I could let you know what Dino's in part was, and that is he knew --

THE COURT: Ms. Gorman, if I may, I would rather that -- if you have made changes in the plea agreement -- and have they been agreed to by Mr. Kennedy?

MR. KENNEDY: Yes, Your Honor.

THE COURT: Let me just see the plea agreement after he's signed and we'll deal with them then. What I'm trying to say to you is I don't want to base anything on an oral representation to me. I want to be convinced that the plea agreement and the statement of fact in the plea agreement is accurate.

MS. GORMAN: Yes, Your Honor. I made the changes. I just wanted you to read it.

THE COURT: Mr. Mitchell, would you like to sign the plea agreement?

THE WITNESS: This is signing for the plea agreement that I agree to all of this?

THE COURT: Yes.

MS. GORMAN: Your Honor, we've all executed that.

THE COURT: Mr. Mitchell, I indicated to you that before I could accept a guilty plea, I would need you to tell me what you did because I have to be satisfied that you are actually guilty of the crime that you are pleading guilty to before I can accept your guilty plea. I would like to deal with this by reading to you the fact statement from the plea agreement that you just signed. After I have read that fact statement to you, I'm going to ask you whether or not it is a true statement. All right.

THE WITNESS: Yes, sir.

THE COURT: This reads that in or around February of 2007, Johnny Raymond was visiting you and other friends and relatives in Phoenix, Arizona. Raymond informed you and others that he had some U.S. Savings Bonds, face value of about $600,000, that had been stolen from a house in Sparks, Nevada. He consulted with you and co-defendants Jerry Mitchell and Tony Mitchell regarding whether the bonds could

be negotiated or sold for profit. You brought the subject up with your friend, Danny Leo. Leo knew an individual in Chicago who might be able to determine whether they could be sold. Leo and Raymond mailed three of the bonds to this person.

Raymond, Tony Mitchell, Jerry Mitchell, Danny Leo and you then planned to take the rest of the bonds to this individual in Chicago. You traveled from Phoenix to Sacramento by car to pick up the remainder of the bonds. You decided to travel from Sacramento to Chicago by train to avoid airport security screening, and bought train tickets for the trip. You left Sacramento for Chicago on February 18th, 2007. And due to misconduct, you were removed from the train in Helper, Utah on February 19th of 2007.

You admit that you knew that Johnny Raymond had the bonds and that they were stolen and that you helped in the attempt to sell them in Chicago by introducing Danny Leo to Johnny Raymond?

MS. GORMAN: Correct.

MR. KENNEDY: Your Honor, if I could just note for the record, Johnny Raymond and Donny Green are the same person. Mr. Raymond is actually now known in this case as Donny Green.

THE COURT: All right. Thank you.

Mr. Mitchell, is that a completely true statement that I just read to you?

THE WITNESS: Yes, Your Honor.

THE COURT: Ms. Gorman, do you know of any valid defense that would prevail here at trial or do you know of any other reason why Mr. Mitchell should not be permitted to plead guilty?

MS. GORMAN: I don't, Your Honor.

THE COURT: Mr. Mitchell, do you understand that if you do plead guilty here today, that the next step in the process will be the preparation of a presentence report? That presentence report will contain a calculation of a guideline range, which is a range of months from a low end to a high end within which it is likely that your sentence will fall. Do you understand that?

THE WITNESS: Yes, Your Honor.

THE COURT: That calculation will be based on the Federal Sentencing Guidelines, which are not mandatory, which means I do not have to follow them. It's possible, therefore, that the sentence you receive from this Court might be different from what you expect. Do you understand that as well?

THE WITNESS: Yes, Your Honor.

THE COURT: Mr. Mitchell, this is very important that you understand. Once this Court has accepted your

guilty plea, and that is something that is expected is going to happen in just a few minutes, afterwards you will remain bound by that guilty plea and you will not be allowed to withdraw your plea even if the sentence that I impose upon you is different from what you expect. Do you understand that?

THE WITNESS: Yes, Your Honor.

THE COURT: Do you also understand that if you are sentenced to prison, that you will not be released any earlier on parole because in the federal system there is no such thing as parole?

THE WITNESS: Yes, Your Honor.

THE COURT: Do you understand that, Mr. Mitchell?

THE WITNESS: Yes, Your Honor.

THE COURT: And, finally, do you understand that either you or the government may have the right to appeal to a higher court the sentence that I impose upon you?

THE WITNESS: Yes, Your Honor.

THE COURT: Mr. Mitchell, having now been reminded of the rights that you have but that you will be giving up if you do plead guilty, again, those rights are those attached to the rights at trial that you would have if we proceeded to a trial, and also being reminded of the maximum possible penalty of the crime to which you are pleading guilty, is it still your intention to plead guilty here

today?

THE WITNESS: Yes, Your Honor.

THE COURT: How do you plead to the charge that is contained in Count 1 of the indictment, and that is that you did violate 18 United States Code, Section 2314, and 18 U.S. Code, Section 371, conspiracy to transport and transfer stolen securities, guilty or not guilty?

THE WITNESS: Guilty, Your Honor.

THE COURT: Mr. Mitchell, are you pleading guilty voluntarily and of your own free will?

THE WITNESS: Yes, Your Honor.

THE COURT: It is the finding of the Court in the case of the United States of America vs. Dino Nick Mitchell that the defendant is competent and capable of entering an informed plea, that his plea is entered knowingly and voluntarily, that he knows his rights and he was waived those rights, that he is aware of the nature of the charges against him and the consequences of the plea, and that the plea is supported by an independent basis in fact containing the essential elements of the offense. The plea is therefore accepted and the defendant is adjudged guilty of the crime pleaded to.

Mr. Mitchell, the probation officer with the responsibility to prepare your presentence report is Ms. Wendy White, who's sitting on the front row of the

courtroom. As she prepares this presentence report, she's going to interview you and it's important that you cooperate with her. By that I mean that you give her truthful answers to the questions she asks and that you answer her questions completely. When Ms. White interviews you, you do have the right ot have Ms. Gorman present. I would encourage you to always take advantage of that, to have her there. You will have a chance to see the presentence report. If you do not believe that it is accurate, you will be able to challenge those inaccuracies. You will also have an opportunity to speak on your own behalf before you are sentenced in this case.

I understand, counsel, that you have agreed to a sentencing date of the 20th of August at 2:30; is that correct?

MS. GORMAN: It is, Your Honor.

MR. KENNEDY: Yes, Your Honor.

THE COURT: We'll set that date and time for sentencing.

Further, counsel, Mr. Mitchell has been on pretrial supervision. I presume pretrial supervision.

MS. GORMAN: He has.

THE COURT: To my knowledge -- I have not had anything submitted to me officially, but to my knowledge he has complied with all the terms and conditions of that

pretrial release.

Mr. Kennedy, is there any reason why he should not be permitted to continue on that status?

MR. KENNEDY: The government would not object to that.

THE COURT: I will allow you to continue to do so, Mr. Mitchell, meaning that until you are sentenced, you will be continued on pretrial supervision under the same terms and conditions as you have been in the past. I just have to caution you that if you violate any of those terms or conditions, you know that you could be subjected to be taken into custody and held until you are sentenced?

THE WITNESS: Yes, Your Honor.

MR. KENNEDY: Your Honor, I would like to put one thing on the record and make it very clear that the government does request that the defendant have absolutely no contact with any of the co-defendants in this case. And I make this request based on a comment that Mr. Mitchell made last week in the presence of his counsel. I think Ms. Gorman is aware of what I'm referring to. I don't want to put anymore on the record, I would be glad to approach, but if the Court would instruct to have absolutely no contact with any of the co-defendants.

THE COURT: Is that not one of the current conditions?

MR. KENNEDY: I believe it is, but it needs to be reemphasized.

THE COURT: Mr. Mitchell, I will do that. I am presuming that one of the current terms or conditions of your pretrial release is that you not have any contact with your co-defendants. If it is not one of the conditions, I will impose it. I will stress with you that it's very important that you comply with that, that you avoid that contact.

THE WITNESS: Promise.

THE COURT: All right.

Counsel, is there anything else here today?

MS. GORMAN: No, Your Honor.

MR. KENNEDY: Not from the government. Thank you, Your Honor.

THE COURT: I need to go up and talk to a bunch of potential jurors and explain what happened here.

We'll be in recess.

MR. KENNEDY: Thank them on behalf of the government for coming today, if you would, please.

THE COURT: I will. I will do the same for you, Ms. Gorman.

MS. GORMAN: Thank you, sir.

THE WITNESS: God bless you.

(Whereupon, the proceeding was concluded.)

C E R T I F I C A T E

I hereby certify that the foregoing matter is transcribed from the stenographic notes taken by me and is a true and accurate transcription of the same.

PATTI WALKER, CSR-RPR-CP DATED:
Official Court Reporter
350 South Main Street, #146
Salt Lake City, Utah 84101
801-364-5440