IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

CENTRAL DIVISION

UNITED STATES OF AMERICA, )
Plaintiff, )
vs. ) Case No. 2:07-CR-149TS
DINO NICK MITCHELL, )
Defendant. )
____________________________)

BEFORE THE HONORABLE TED STEWART

--------------------------------

July 9, 2009

Sentencing

REPORTED BY: Patti Walker, CSR, RPR, CP
350 South Main Street, #146, Salt Lake City, Utah

A P P E A R A N C E S

For Plaintiff: Michael Kennedy, AUSA
Scott Romney, AUSA
185 South State Street, #300
Salt Lake City, Utah 84111

For Defendant: Robert Steele
UTAH FEDERAL DEFENDER'S OFFICE
46 West Broadway, #110
Salt Lake City, Utah 84101

SALT LAKE CITY, UTAH; THURSDAY, JULY 9, 2009; 1:30 P.M.

PROCEEDINGS

THE COURT: We are here in the case of United States of America vs. Dino Nick Mitchell. That is case 07-CR-149. Representing the United States is Mr. Mike Kennedy and Mr. Scott Romney, on behalf of the defendant, Mr. Robert Steele. The purpose of this hearing is to deal with any factual disputes or legal issues that may arise out of the presentence report and then the imposition of the sentence.

Counsel, did you both receive a copy of that presentence report?

Mr. Kennedy?

Mr. KENNEDY: Yes, Your Honor.

THE COURT: Mr. Steele?

MR. STEELE: Yes, Your Honor.

THE COURT: Have you had a chance to review it with Mr. Mitchell?

MR. STEELE: Yes.

THE COURT: Mr. Mitchell, was a copy of the presentence report made available to you.

MR. MITCHELL: Yes.

THE COURT: Did you have an adequate opportunity to discuss it with Mr. Steele?

MR. MITCHELL: The letter that he sent me?

THE COURT: No, the presentence report.

MR. MITCHELL: Yeah, I did.

THE COURT: You have had a sufficient amount of time to discuss it with Mr. Steele?

MR. MITCHELL: Yes, Your Honor.

THE COURT: The presentence report will be made a part of the record. The clerk is ordered to place the report under seal. If an appeal is taken, counsel on appeal will be permitted access to all parts of the report except for the probation officer's rationale.

Counsel, the Court would note that the presentence report, which includes an enhancement of two levels for obstruction of justice, reflects the offense level of 20, a criminal history category of Roman numeral I, therefore an advisory guideline range of 33 to 41 months.

Mr. Steele, you oppose the two-level enhancement for obstruction of justice. Do you wish to make your argument in opposition to it now?

MR. STEELE: Your Honor, if you have received our pleadings on that, I think that's as clear as we can be, unless you have questions or would like argument on it.

THE COURT: Well, let's see if Mr. Kennedy wants to argue it.

Mr. Kennedy.

Mr. KENNEDY: Your Honor, I think I do, and

particularly what I would like to do, and I will do whatever the Court wants, I would like to address both of Mr. Steele's latest filings. I apologize to the Court, I did not receive Mr. Steele's pleadings in time to file a responsive pleading on behalf of the government within the Court's window of seven days before sentencing. I didn't want to just throw it over the transit at the last minute, so I decided not to file something in writing, but I would like to address his points now orally.

THE COURT: Why don't you go ahead and do it now then.

Mr. KENNEDY: Thank you, Your Honor.

Your Honor, if I may, I will start with the obstruction enhancement. I believe that the case has been made for an obstruction enhancement. I'm going to focus primarily on the perjury aspects of it. I believe that a good case could be made and has been made for the threat of obstruction, but I will concede that that's not the strongest argument for an obstruction enhancement in this case. I think it's there and particularly in context with everything else that's gone on in this case, I think the Court could find it, but I think I would like to focus more on the perjury.

In the government's sentencing memorandum, we did lay out for the Court what statements -- the key statements

that we believe were perjurious, and they can basically be wrapped up in three -- summarized by three different types of statements. First, there were several statements where the defendant explicitly said that he had no knowledge of these savings bonds, was not present at any meetings relating to the savings bonds, wasn't told about them, didn't know about them, didn't work on the plan to try to sell them, and that he was not aware that that was the purpose of the trip to Sacramento and ultimately to Chicago.

THE COURT: Mr. Kennedy, I will have to tell you, of the parts of his testimony that you believe justify the obstruction enhancement, that is the only one that's relevant or material to the Court. This really boiled down to a matter of whether or not the jury believed that this defendant actually knew that the bonds had been stolen. The others that you have set out to me, except to the extent they may touch on that issue indirectly or perhaps go to his credibility generally, are just not material. So I want you to focus on those statements that go to the issue of whether he did or did not know that these bonds had been stolen.

Mr. KENNEDY: Your Honor, I will focus on that then.

First of all, it's key that those statements are contradicted by his own prior statement under oath to this Court. He was either perjuring himself before this Court

when he entered his guilty plea or he was perjuring himself before the jury. Those are the only two choices. He was either telling the truth then or he was telling the truth at trial.

The jury, and I agree with Mr. Steele that we don't know exactly what went into their decision, but if the statement that he told the jury was true and believed by the jury, he could not have been convicted under the Court's instructions to the jury because he would not have had knowledge. It was therefore material, but also we believe that it was false, and I believe that the Court can certainly find that it was false, because, again, he either lied before or he lied before the jury. That is really the basis of it.

And, frankly, if he lied at his change of plea hearing and that was perjury, then that also would support a finding of obstruction in the case overall. I think it would be a rather odd construct, but he was either lying then or he was lying to the jury. And it was clearly a material lie.

The other statements, as the Court has indicated, were supportive of that lie. Basically the lies with regard to the credit card payment and the purpose of the trip, those lies basically supported the ultimate lie that he had no knowledge of this criminal conduct. Those statements

also contradicted his statement to the FBI, and it wasn't just a case of him misremembering on the stand because when those contradictions were pointed out to him, he still maintained that account.

Basically, again, we would ask the Court to find that he did perjure himself in his trial testimony. That did constitute obstruction. We would ask the Court, if it does so find, to be fairly specific with regard to what statements he made that were perjurious as the Tenth Circuit has recommended for the application of this enhancement. We do think it applies and we would ask the Court to so find.

With regard to the sentencing memorandum that Mr. Steele filed and some of the arguments that he made, he was essentially requesting a downward variance under the advisory guideline range. The government strongly opposes a downward variance in this case.

Under the 3553(a) factors that the Court is required to consider, the first one is the defendant's history and the nature of the offense. In terms of the defendant's history, yes, it's commendable that he has stopped smoking marijuana and apparently has stopped cheating on his wife and started going to church, post offense rehabilitation. But I think the Court, when looking at those factors, should also look at whether, as a part of his post offense rehabilitation, he has accepted any

responsibility for his conduct. Clearly, he has not, not up until this day. And I think that is a key part of it. I will be coming back to the lack of acceptance of responsibility.

The nature of the offense. The Court is well aware of that. This was an effort on behalf of five individuals to essentially cheat an elderly man out of the bulk of his lifetime savings. Concededly, Mr. Mitchell did not participate in the original theft of the property, but then he's gotten the credit of the guidelines for that by the minimal participant recommendation, which the government supports. But the nature of the offense is particularly -- I don't want to use the word heinous, it's particularly serious.

And in his memorandum the defendant focuses primarily on deterrence and recidivism. The government agrees that those may not be huge concerns that the Court should have with regard to this particular defendant, but I think the Court should look at the nature of the offense and the fact that in his personal characteristics, the defendant is not accepting responsibility.

As I read Mr. Steele's memorandum, what I really came away with is his main argument was wanting to avoid unwarranted disparity between -- or, frankly, any disparity between Mr. Mitchell's sentence and the sentence of his

co-defendants. And 3553(a)(6) does refer to that as a factor that the Court should consider, unwarranted disparities.

There are two parts to that. First of all, there are the disparities on the national level across court districts and even the Supreme Court in Gall recognized that, you know, everything else being equal, the guidelines are a good measure of that to avoid those sorts of unwarranted disparities.

Now with regard to the disparities among the defendants in this case, I think what the Court should look at is what each defendant got and how are they different from Mr. Mitchell. Donny Green, he received a sentence of 27 months, but that included acceptance of responsibility. He got no reduction for a role in the offense because he was the leader. He didn't get an enhancement either. He just got no adjustment for role.

THE COURT: He was the one who stole the bonds.

Mr. KENNEDY: He was.

THE COURT: That was certainly one of the reasons why he got the higher sentence. And that is certainly putting him at a different position than this defendant, wouldn't you agree?

Mr. KENNEDY: That is correct.

Tony Mitchell received 24 months. He also

received credit for acceptance of responsibility and for a minimal -- or a role between minor and minimal, as I recall. Same thing with Jerry Mitchell who got a sentence of 21 months.

As I recall, all those sentences were close to the low end of the guideline range. I don't recall exactly whether there may have been a variance. It was quite a while ago. They were close to the low end of the guideline range for those defendants after those adjustments were applied.

Danny Leo ultimately received a sentence of six months, approximately. He had gotten a minor participant reduction. He had gotten acceptance of responsibility. Then he got the 5K motion by the government, which, in essence, is super acceptance. He not only accepted responsibility, but he went the extra mile and tried to make this right by cooperating with the government.

So the difference between Mr. Mitchell and the other defendants comes down to two factors. It comes down to obstruction and it comes down to not getting any credit for acceptance of responsibility.

The flip side of the unwarranted disparity is that the Court, I believe, should avoid an unwarranted parody between defendants. If there is a rational and good reason why one defendant is treated differently and gets a longer

sentence, then that is not an unwarranted disparity. To put them on par would be an unwarranted parody between defendants. I think this is what would happen here if the Court were to grant a downward variance certainly as far as the defendant is requesting, and it would basically be telling, for instance, Tony Mitchell and Jerry Mitchell that it doesn't matter that you had a smaller role in the offense and accepted responsibility and didn't obstruct justice, Mr. Mitchell is going to get the same sentence as you did. We don't think that would be fair to those defendants and I don't think it would be just with regard to what sentence Dino Mitchell should get.

On that, Your Honor, I will submit it. I know you've read all the materials, so you are fully aware of all of our other arguments.

THE COURT: Thank you, Mr. Kennedy.

Mr. Steele, do you wish to respond?

MR. STEELE: Yes, Your Honor, and I think I will move from back to front, so I'll start with 3553(a)(6), the disparity argument. Danny Leo is in a different category I think than perhaps all of the others and I don't feel that sentence is something I need to argue about.

Donny Green, as the Court pointed out, stole the bonds, committed burglary to do that, and his behavior in the case is by far the greatest.

Tony Mitchell, Jerry Mitchell, Dino, their behavior is similar, although, as stated at the trial by Danny Leo, it's much clearer what Dino did, was hook up Danny Leo with Donny Green.

And so what is the difference between -- well, the three Mitchell defendants in the middle this field? Donny Green and Jerry and Tony all have -- I don't know that they at the time of sentencing had felony convictions, but they all had felony convictions other than this case, Donny's relating to another scam like this in Washington I believe. Tony had a prior burglary. Jerry had a manslaughter -- vehicular manslaughter in juvenile court I believe.

And so Dino's criminal record is different than theirs. And Dino's behavior post offense -- I mean he has been exemplary and done some things that he wasn't asked to do and accomplished some things that he was asked to do.

Your Honor, I don't think that -- well, acceptance of responsibility and obstruction in this case are very similar. What Dino did was say I repudiate my plea and I want to go to trial, went to trial and said -- he explained his plea, he explained how that all came about, and then he said, I didn't know anything about the bonds, as simple as that.

That conglomeration, those two things I think are more like one, and you would put against that his behavior,

his criminal record and say that he should be sentenced more like those in the middle, the two other Mitchells, and certainly not higher than Donny Green based on having gone to trial and what happened at trial.

If I jump to obstruction, I just described that he -- you know, he said, I don't know, I don't know anything about those bonds. The jury clearly didn't believe that and convicted him.

What happened -- so, Your Honor, if it's as simple -- I'm jumping to the obstruction. If it's as simple as he stood here and pled guilty under oath and then later he got on the stand and said, I didn't know anything, if it's as simple as that, then he's guilty of obstruction. But you heard his explanation, you read our pleadings concerning that, what happened when he did plead guilty, and I don't think that should be the way this is decided.

When he said, I didn't know anything about the bonds, the only real contradictory evidence to that came from Danny Leo saying, yes, he did, he was included in all of these steps that happened, although not in a very particular way. One of the things that's pointed to is the conversation in California with Stele Costello. And Mr. Costello -- and I acknowledge that it was said he wasn't completely forthcoming, but said he really didn't have any dealings with Dino Mitchell about this case, that he dealt

with Danny Leo. And so I think it comes down as simple as that.

The cases that we have cited to, which include the cases cited by the government, have more than that, showing that he is lying. I mean there are several witnesses and it's about a particular fact that is misleading and causes a problem, and there is evidence and witnesses all saying something different than that particular thing. This is as simple as Dino Mitchell getting on the stand and saying I didn't do that. And that is clearly not enough, just saying I didn't do that, and it's slightly more involved than that.

But if Your Honor sees it -- well, I think it's as close to as simple as that, saying I didn't do it and putting the government to their burden.

Does Your Honor have any questions?

THE COURT: I don't, Mr. Steele. Thank you.

Mr. Kennedy, do you wish to respond?

Mr. KENNEDY: No, Your Honor. Thank you.

THE COURT: Counsel, this is a more difficult issue than either of you have presented it to be. The Court is concerned with the fact that case law exists -- substantial case law and, frankly, the Court's own instincts would indicate that if the obstruction of justice applies in this case, that it would probably apply in any case where the defendant decided to take the stand and says he wasn't

guilty or she wasn't guilty. The Court believes that would be an unjustified result.

The Court would rule specifically as follows: In this matter the defendant has consistently, with the exception of his subsequently withdrawn guilty plea, stated that he knew nothing of the stolen bonds. The Court would note that it cannot agree with Mr. Kennedy's characterization that he is guilty of perjury simply because on one occasion, the guilty plea, he pled guilty, said that he knew that the bonds were stolen and subsequently at trial he said he did not. The Court was persuaded, and I believe it indicated such in the ruling where it allowed the defendant to withdraw his plea, that it had reached a conclusion that at the time of his guilty plea, that he did not in fact acknowledge his guilt, that he was pleading guilty for other reasons. So I believe that that has already been dealt with by the Court.

His statements at trial were consistent with that denial. That testimony was contradicted by the testimony of Danny Leo, but Mr. Leo's credibility is not above reproach. By its verdict, the jury must have found that the defendant did know that the bonds were stolen. In other words, it believed Mr. Leo. However, the Court cannot find, based on the evidence before it, that the defendant perjured himself while testifying at his trial. Rather, it appears to the

Court that the defendant was exercising his right to testify and imposing this enhancement in this case would essentially punish defendant for doing so. Therefore, the Court will not impose this enhancement based on the statements defendant made at trial.

As to the enhancement for the threat, the Court would rule that there is nothing to suggest that the defendant did anything to willfully obstruct or impede or attempt to obstruct or impede the administration of justice. The comment itself was not made to Mr. Leo and there is no evidence that it was ever communicated to him. Further, there is nothing to suggest that defendant did anything to follow through with this comment. At trial, the defendant clarified that Mr. Leo would pay for his actions through God. The Court finds that the single instance of defendant making a vague comment about a witness is insufficient to warrant application of the enhancement in this case.

Based thereon, counsel, the Court intends to proceed with an offense level of 18, a criminal history category of Roman numeral I, and therefore an advisory guideline range of 27 to 33 months.

The Court wants to also note for the record that it received today letters from one of the defendant's friends, ecclesiastical leaders and business associates.

Mr. Kennedy, did you receive copies of those

letters?

Mr. KENNEDY: Just before we started, yes, Your Honor, and I had a chance to look at them.

THE COURT: All right. Thank you.

Counsel, do either of you have anything else?

Mr. KENNEDY: No, Your Honor.

MR. STEELE: Mr. Mitchell would like to speak.

THE COURT: Mr. Mitchell, if you would like to.

MR. MITCHELL: Yes.

THE COURT: You may do it from right there.

MR. MITCHELL: Okay. I just want to say I respect everybody for everything they did. I'm sorry I put you guys through everything, but I still have to say that I am not guilty. I didn't mean -- I didn't even know when I pled guilty at the time that it was perjury or anything because, to be honest with you, I always kept out of trouble. I tried my best. I don't really understand a lot of things that's gone on here. It's my first time. But I do admit that I'm not guilty. I did not know about those bonds, Your Honor. I didn't know that they were traveling with them. I was just going for my purpose where I got in trouble with my wife. I took my Tahoe to Sacramento to go party and come back to my residence in Phoenix, Arizona. If I had plans to go sell checks and stay a week or two up there, I wouldn't haven't taken my Tahoe, or however you want to put it.

I just want to say I'm not guilty. I do apologize for everything. I did not know about the bonds. I know the jury said I was guilty, but, you know, that is their decision. But in my heart and my mind, I am not guilty. It's a true statement. I did come in here and pled guilty at the time, but I was under a lot of pressure. I was looking at ten to 12 months, or five years. I just didn't know what to do, Your Honor. I was just like -- didn't know what to do. So my former attorney told me that was the best thing to do, so I went along with it. I didn't even know that this was a perjury of doing that. I was just doing what she told me to do.

I'm sorry for everything. That's it, Your Honor.

THE COURT: Thank you, Mr. Mitchell.

Counsel, in considering the 3553 factors, the Court would note the following: First of all, the Court agrees with Mr. Kennedy's characterization of the nature of this offense. This was not a minor offense. Had this matter not been discovered in a rather extraordinary way that it was on the train going through Utah, a substantial part of the life savings of an innocent victim in Nevada would have been lost by the defendant and his co-defendants in this matter.

As to the history and characteristics of the defendant, the defendant here has little criminal history.

The Court would further note that it appears that he has, as a result of this offense, made changes in his life. He has stated specifically that he has found ways to deal with infidelity and marijuana abuse. He has worked consistently to provide for his family and ceased cheating on his wife. The Court believes that the sentence it is going to impose will reflect the seriousness of this offense and promote respect for the law and provide just punishment.

The Court also is cognizant of the fact that the defendant has to this point still not accepted responsibility for his actions. He has remained consistent in that respect. But the Court believes that that failure, even after a jury decision that he is guilty, is something the Court must consider.

The Court also would note that it wants to avoid unwarranted sentencing disparities in this case and that is also a consideration that it is taking into account.

Based on those considerations, counsel, the Court intends to impose the sentence as follows. After you have heard the sentence, if either of you wishes to make a legal objection to it, I will give you the opportunity to do so.

It is the judgment of the Court that the defendant, Dino Nick Mitchell, is placed in the custody of the United States Bureau of Prisons for a period of 27 months. Upon release from confinement, the defendant shall

be placed on supervised release for a term of 36 months. Within 72 hours of release from the custody of the Bureau of Prisons, the defendant shall report in person to the probation office in the district to which the defendant is released.

The Court orders that the defendant submit to one drug test within 15 days of placement on supervision and at least two periodic drug tests thereafter as directed by the probation officer in addition to any other testing requirements ordered by the Court.

The Court orders that the defendant submit to the collection of a DNA sample.

The defendant shall not commit any federal, state or local crime and, as a convicted felon, shall be prohibited from possessing a firearm or other dangerous device.

In addition, the defendant shall not illegally possess a controlled substance and shall comply with the standard conditions of supervision as adopted by this Court.

The defendant shall also comply with the following special conditions: First, the defendant shall maintain full-time verifiable employment or participate in academic or vocational development throughout the term of supervision as deemed appropriate by the probation office.

Second, the defendant shall provide the probation

office access to all requested financial information.

Third, the defendant shall submit his person, residence, office or vehicle to a search conducted by the probation office at a reasonable time and in a reasonable manner based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation. The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.

Fourth, the defendant will submit to drug or alcohol testing as directed by the probation office and pay a one-time $115 fee to partially defray the cost of collection and testing. Should testing reveal the use of illegal substances, the defendant shall participate in substance abuse treatment under a co-payment plan as deemed appropriate by the probation office.

The Court finds that the defendant does not have the ability to pay a fine, therefore no fine is imposed, but he is ordered to pay a special assessment fee in the amount of $100, which shall be due immediately.

Counsel, the Court received from the pretrial services officer, Ms. Holt in this case, a report indicating that the defendant is complying with all of the terms of his pretrial supervision.

Mr. Kennedy, do you have any objection to the

defendant being allowed to self-surrender?

Mr. KENNEDY: Your Honor, I have the same objection that we had when we addressed this at the end of trial, so I will submit it on that.

THE COURT: All right.

Counsel, the Court will give the defendant the opportunity to self-surrender, and will order that he do so by the 21st of September at two o'clock in the afternoon at whatever facility is designated by the Bureau of Prisons.

MR. STEELE: Your Honor, I missed that date. I'm sorry.

THE COURT: The 21st of September at two o'clock.

Counsel, do either of you wish to make a legal objection to the sentence you just heard?

Mr. KENNEDY: No legal objection, just I understand the Court overruled our position with regard to the obstruction enhancement, but there is no objection to the legal basis for the sentence.

THE COURT: Thank you, Mr. Kennedy.

Mr. Steele.

MR. STEELE: No objection, Your Honor.

THE COURT: The Court orders that the sentence shall be imposed as stated.

Mr. Mitchell, you have the right to appeal either your conviction or the sentence you just received. It's

important that you understand that, with very few exceptions, any notice of that appeal must be filed within ten days of judgment being entered in this case.

If you cannot afford an attorney to pursue that appeal, the Court will appoint an attorney for you and the Court will provide to that attorney the transcript from this proceeding that would be required for the appeal.

If you cannot afford the cost of an appeal, you may apply for leave to appeal in forma pauperis, and Mr. Steele can explain to you what that means. If you request, the clerk of the court will prepare and file a notice of appeal on your behalf.

Is there anything else, counsel?

Mr. KENNEDY: Not from the government, Your Honor. Thank you.

THE COURT: Mr. Steele.

MR. STEELE: Your Honor, my client, as best I can tell, qualifies for a camp at the BOP. We would be asking for a recommendation that he serve his time at a camp in Tucson to be near family.

THE COURT: Mr. Kennedy, do you wish to respond to that?

Mr. KENNEDY: Your Honor, I have nothing to say with regard to those recommendations. If it's appropriate and the BOP finds it appropriate, I have no objection.

THE COURT: All right. The Court will make that recommendation to the Bureau of Prisons.

Anything else?

Mr. KENNEDY: No, Your Honor. Thank you.

MR. STEELE: No, Your Honor.

THE COURT: Thank you both. We'll be in recess.

(Whereupon, the proceeding was concluded.)

C E R T I F I C A T E

I hereby certify that the foregoing matter is transcribed from the stenographic notes taken by me and is a true and accurate transcription of the same.

PATTI WALKER, CSR-RPR-CP DATED:
Official Court Reporter
350 South Main Street, #146
Salt Lake City, Utah 84101